IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CIVIL NO.: _____

FIRST PROTECTIVE INSURANCE
COMPANY

    Plaintiff,

v.

WILLIAM MILLER and ANGELA
MILLER,

    Defendants.

**COMPLAINT FOR DECLARATORY RELIEF**

NOW COMES the Plaintiff, FIRST PROTECTIVE INSURANCE COMPANY (hereinafter "Plaintiff" or "First Protective"), by and through undersigned counsel, and complaining of the Defendants and seeking declaratory judgment, hereby alleges and states as follows:

1. This is a Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 and 2202, in which First Protective seeks a determination of its rights and responsibilities under a specific policy of insurance issued to Defendants, William Miller and Angela Miller.

**PARTIES**

2. Plaintiff First Protective is a foreign corporation incorporated under the laws of the state of Florida, with its principal office and business located at 500 International Parkway, Lake Mary, Florida 32746.

3. Defendants, William Miller and Angela Miller, are citizens and residents of Carteret County, North Carolina.

4. As will be further described herein, the amount-in-controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. By virtue of the complete diversity of citizenship among the parties, and the fact that the amount-in-controversy exceeds $75,000.00, this Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a).

6. An actual and continuing controversy exists among the parties to this action concerning the applicability of coverage under the policy of insurance issued to the Defendants. The Court is, therefore, authorized to declare the rights of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim and questions surrounding coverage under the policy of insurance at issue occurred in Carteret County, North Carolina.

8. Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

**A.     The Homeowners Policy**

9. First Protective caused to be bound a Homeowners Policy bearing Policy Number FPHW-000015370 (the "Policy") to Defendants covering the property located at 205 Gem Ct. in Beaufort, Carteret County, North Carolina 28516 (the "Property"). The Policy had effective dates from June 12, 2018 to June 12, 2019. The Policy provided coverage for the dwelling, other structures, personal property, and loss of use. A true and accurate copy of the Policy is attached as **Exhibit A**.

10. The Policy provides a Duties After Loss provision, which states the following:

SECTION I – CONDITIONS

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or your agent;
2. Protect the property from further damage. If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses;
3. Cooperate with us in the investigation of a claim;
4. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
5. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
6. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insured" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged personal property described in 4. Above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss.

However, if a state of disaster is proclaimed or declared for the State of North Carolina or for an area within the state in accordance with North Carolina law and the covered property that has sustained loss is located within the geographic area designated in the disaster proclamation or

declaration, this 60-day period shall not commence until the expiration of the disaster proclamation or declaration, including all renewals of the proclamation or 45 days, whichever is later.

11. The Policy provides Appraisal, Choice of Law, and Suits Against Us provisions, which state the following:

**F. Appraisal**

If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that a choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:

1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

\*\*\*

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within three years after the date of loss.

\*\*\*

**Choice Of Law**

This policy is issued in accordance with the laws of North Carolina and covers property or risks principally located in North Carolina. Any and all

claims or disputes in any way related to this policy shall be governed by the laws of North Carolina. All other provisions of this policy apply.

**Ex. A.**

**B.     The Underlying Claim**

12.     On or about September 25, 2018, Defendants notified First Protective of damage incurred at the Property as a result of Hurricane Florence on or around September 14, 2018.

13.     On or around October 5, 2018, First Protective sent an independent adjuster on its behalf to inspect the Property. The independent adjuster found damage and issued a report to Plaintiff. Thereafter, Plaintiff made payments under Coverage A to Defendants on November 16, 2018.

14.     Defendants subsequently submitted a supplemental claim from contractor, Metro Real Estate for the loss incurred to the Property on September 14, 2018 (hereinafter the "Metro Estimate").

15.     The Metro Estimate totaled $108,784.78 for the dwelling. A copy of the Metro Estimate is attached hereto as **Exhibit B**.

16.     Defendants subsequently informed First Protective that Defendants were in a dispute with contractor Metro Real Estate and contractor Eastern Legacy, and notified First Protective that they Defendants had not authorized Metro Real Estate to perform repairs at the Property and that Defendants would be looking for a new contractor.

17.     Defendants and First Protective subsequently agreed in November of 2019 to schedule a re-inspection of the Property.

18.     On or about January 28, 2020, First Protective sent an independent adjuster on its behalf to conduct a re-inspection of the Property. The independent adjuster found additional

damage and issued a report to Plaintiff. Thereafter, Plaintiff made payments under Coverage A to Defendants on February 26, 2020.

19. On December 10, 2020, Defendants submitted a supplemental claim from contractor, David Price Construction for the loss incurred to the Property on September 14, 2018 (hereinafter the "David Price Estimate").

20. The David Price Estimate totaled $337,137.26. A copy of the David Price Estimate is attached hereto as **Exhibit C**.

21. Plaintiff had and have continued to have a number of questions regarding the scope and price of the David Price Estimate and disputes the same. Plaintiff has made multiple inquiries regarding this estimate to Defendants.

22. Given the dispute as to the cost to repair the Property, specifically the dwelling under Coverage A of the Policy, Plaintiff demanded appraisal on or about April 15, 2021. A copy of Plaintiff's First Demand Letter is attached hereto as **Exhibit D**.

23. Defendants failed to respond to Plaintiff's April 15, 2021 appraisal demand.

24. Plaintiff subsequently sent letters to Defendants on May 6, 2021, May 27, 2021, and June 30, 2021, reiterating Plaintiff's demand for appraisal. A copy of the May 6, 2021, May 27, 2021 and June 30, 2021 appraisal demand letters are attached hereto as **Exhibit E**.

25. On July 1, 2021, Defendants notified Plaintiff via email that they were naming Daphne Whitemore as their appraiser. A copy of the July 1, 2021 email is attached hereto as **Exhibit F.**

26. Defendants were subsequently informed by Ms. Whitemore that she was a real estate appraiser and could not provide them with a property damage estimate for the purposes of their homeowner's property damage claim.

27. Defendants failed to subsequently engage with or name a new appraiser.

28. Plaintiff subsequently sent a letter to Defendants on July 28, 2021 reiterating Plaintiff's demand for appraisal. A copy of the July 28, 2021 appraisal demand letter is attached hereto as **Exhibit G**.

29. On September 9, 2021, Defendants contacted Plaintiff and indicated that they would be in touch with a potential appraiser for their claim.

30. Having heard nothing from Defendants, Plaintiff sent a letter on December 2, 2021 to Defendants, informing Defendants that Plaintiff would be closing its claim if it did not receive a response from Defendants within 14 days identifying Defendants' chosen appraiser. A copy of the December 2, 2021 letter is attached hereto as **Exhibit H**.

31. On December 16, 2021, hearing no response from Defendants, Plaintiff closed the claim.

32. On October 19, 2022, Defendants called Plaintiff requesting that Plaintiff re-open the claim.

33. Defendants have failed to abide by the Policy provisions, including but not limited to failing to abide by the Appraisal provision.

34. More than three years have passed since the September 14, 2018 date of loss.

35. Defendants have never filed a lawsuit against Plaintiff arising from the September 14, 2018 hurricane claim.

36. Defendants are precluded from recovering any additional monies arising from their September 14, 2018 claim as the applicable three-year statute of limitations has run.

37. Plaintiff has not waived any rights it may have under the Policy or North Carolina Law.

38. Plaintiff specifically notified Defendants that the claim would be closed if there was no activity or response.

39. Plaintiff has not waived or extended any statute of limitations that may exist under North Carolina law.

## CAUSE OF ACTION - DECLARATORY JUDGMENT

40. Plaintiff incorporates as if fully set forth herein the allegations contained within the above paragraphs.

41. There exists an actual, substantial and justiciable issue in controversy between Plaintiff and the Defendants concerning the applicability of coverage under the policy of insurance issued to Defendants.

42. A judicial determination and declaration of the rights and obligations of the Parties is necessary and appropriate at this time because Plaintiff has no adequate remedy at law which will resolve the current controversy.

43. The First Protective Policy's "Suit Against Us" provision specifically provides that no action can be brought against First Protective unless there has been full compliance with all the terms under Section I of the Policy and the action is started within three years after the date of loss. **Ex. A.**

44. Defendants have failed to comply with all terms under Section I of the Policy, including the "Appraisal" provision.

45. The Policy's "Appraisal" provision provides, in pertinent part, that "[i]f you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other…" **Ex. A.**

46. Plaintiff sent Defendants an appraisal demand on April 15, 2021 and followed up with Defendants in writing on May 6, 2021, May 27, 2021, and June 30, 2021. See Exs. D and E.

47. Defendants failed to abide by the "Appraisal" provision of the Policy and failed to choose an appraiser within 20 days after receiving Plaintiff's first appraisal demand.

48. Defendants improperly named a real estate appraiser as their chosen appraiser for their claim. Defendants' chosen appraiser did not qualify as a competent appraiser as the real estate appraiser did not qualify as an appraiser for the purposes of a homeowner's property damage claim.

49. Plaintiff subsequently sent Defendants another written follow-up to its original April 15, 2021 appraisal demand on July 28, 2021. **Ex. F.**

50. Defendants failed to subsequently identify a competent appraiser.

51. Plaintiff sent Defendants a letter on December 2, 2021 informing Defendants that Plaintiff would be closing its claim if it did not receive a response from Defendants within 14 days. **Ex. G.**

52. Plaintiff closed the claim on December 16, 2021 having heard nothing from Defendants.

53. Defendants did not respond to Plaintiff's December 2, 2021 letter until Defendants called Plaintiff on October 19, 2022.

54. On October 19, 2022, 4 years, 1 months, and 5 days had passed since the September 14, 2018 hurricane loss.

55. In North Carolina, a cause of action for breach of contract, including breach of an insurance contract, must be brought within three years of the alleged breach.

56. In the context of homeowner's insurance claims, North Carolina's three-year statute of limitations begins to run upon the date of the occurrence of the event out of which the claim arises.

57. Plaintiff's demand for appraisal did not toll or enlarge the three-year statute of limitations.

58. North Carolina is not among the jurisdictions that have enacted statutes that specifically toll the statute of limitations during appraisal.

59. In the instant matter, the three-year statute of limitations began to run on September 14, 2018, the date of the reported hurricane loss.

60. The statute of limitations therefore ran on September 14, 2021.

61. Defendants have never filed a lawsuit against Plaintiff arising from the September 14, 2018 hurricane loss.

62. Defendants are precluded from recovering any additional monies arising from their September 14, 2018 claim as the applicable three-year statute of limitations has run.

63. Plaintiff has not waived any rights it may have under the Policy or North Carolina Law.

64. Plaintiff requests that this Court declare that Plaintiff does not owe additional monies to Defendant for damages arising out of the September 14, 2018 loss as Defendants have failed to abide by the terms set forth in the policy and are precluded from any additional coverage pursuant to the applicable, three-year statute of limitations and the failure to properly present and prosecute a claim under the Policy and existing North Carolina law.

65. For reasons set forth above, Plaintiff is entitled to a declaration from the Court that it does not owe Defendants additional monies under the Policy.

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration as to the rights and obligations of the parties;

2. A declaration that First Protective Insurance Company has no duty to make any additional insurance adjustments and payments to Defendants;

3. For an award of First Protective Insurance Company's attorneys' fees and costs pursuant to the law; and

4. An award of such other legal or equitable relief as this Honorable court may deem just and proper.

This the 10th day of January, 2023.

/s/ Jeffrey D. Keister
JEFFREY D. KEISTER
Bar No: 28612
JORDAN NICOLE LESLIE TENLEY
Bar No: 51787
McAngus Goudelock & Courie, PLLC
Post Office Box 30516
Raleigh, North Carolina 27622
(919) 719-8200
jkeister@mgclaw.com
jordan.tenley@mgclaw.com

*Attorneys for First Protective Insurance Company*